UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7 26 12

JEANNE BATTLE,

                Plaintiff,

      - against -

DAY CARE COUNCIL, LOCAL 205, DC
1707 WELFARE FUND,

                Defendant.

**MEMORANDUM
OPINION & ORDER**

11 Civ. 4043 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Jeanne Battle brings this action under the Employee Retirement
Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., challenging
Defendants' denial of her claim for retiree health benefits. Defendants contend that Plaintiff is
not eligible for such benefits.

        The parties have cross-moved for summary judgment. For the reasons stated
below, Defendants' motion will be GRANTED and Battle's motion will be DENIED.

## BACKGROUND[1]

### I.   PLAINTIFF'S EMPLOYMENT AND ENROLLMENT IN THE PLAN

The DC 1707 Welfare Fund (the "Fund") is an employee welfare plan within the meaning of ERISA and was established pursuant to collective bargaining agreements ("CBAs") between CSAEU, District Council 1707, American Federation of State, County and Municipal Employees ("AFSCME"), Local 205 (the "Union") and various day care centers that employ workers represented by the Union. (Def. R. 56.1 Stmt. ¶ 2; Jusino Aff. ¶ 2)  The Fund is governed by the Welfare Fund Benefit Plan (the "Plan").

Between 1988 and her retirement on January 10, 2010, Battle was employed as an assistant teacher at several day care centers that are signatories to CBAs with the Union. (Def. R. 56.1 Stmt. ¶¶ 2-3; Jusino Aff. ¶ 3, Ex. 1, Ex. 3)  At the time of her retirement, Battle worked

---

[1] Plaintiff did not file a Local Rule 56.1 Statement in support of her motion nor did she file a response to Defendants' Rule 56.1 Statement. "Generally, a 'plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed.'" Young v. Nassau Univ. Med. Ctr., No. 10-cv-00649(JFB)(ARL), 2011 WL 6748500, at *1 n.2 (E.D.N.Y. Dec. 22, 2011) (quoting Jessamy v. City of New Rochelle, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003))).  Moreover, Plaintiff's "failure [to file a Rule 56.1 Statement] alone would justify denial of [her] motion." United States v. Kadoch, No. 96 CV 4720(CBA), 2012 WL 716899, at *2 (E.D.N.Y. Feb. 17, 2012) (citing Local Rule 56.1(a); MSF Holding Ltd. v. Fiduciary Trust Co. Int'l, 435 F. Supp. 2d 285, 304-05 (S.D.N.Y. 2006) (denying defendant's motion for summary judgment for failure to submit a Rule 56.1 statement); Searight v. Doherty Enters., Inc., No. 02-CV-0604(SJF)(JO), 2005 WL 2413590, at *1 (E.D.N.Y. Sept. 29, 2005) (denying motion for summary judgment for failure to submit a Rule 56.1 statement)). "However, district courts are given 'broad discretion to determine whether to overlook a party's failure to comply with local court rules.'" Id. (quoting Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001)). "Where parties fail to file Rule 56.1 statements of fact, the court may choose to accept all factual allegations of the opposing parties as true for the purposes of deciding the motion for summary judgment, or may alternately 'opt to conduct an assiduous review of the record.'" Id. (quoting Holtz, 258 F.3d at 73). Here – given Plaintiff's pro se status – the Court "will deem admitted only those facts in [D]efendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record." Young, 2011 WL 6748500, at *1 n.2 (citing Jessamy, 292 F. Supp. 2d at 504).

for Union Carver Children's Center ("Carver"), a signatory to a CBA with Local 205.  (Def. R. 56.1 Stmt. ¶ 3; Jusino Aff. ¶ 3)

   Battle was covered under the Plan from 1988 – her year of hire – until she lost eligibility on May 31, 2005, apparently due to a loss of covered employment.  (Jusino Aff. ¶ 8, Ex. 1, Ex. 5; see also id., Ex. 12 (August 11, 2010 Battle Ltr. ("I was suspended for about 6 or 7 months from Metro North Day Care.  After winning my case I was transferred to Carver Day Care.")))  Although Battle returned to work in 2006 (id., Ex. 12, Ex. 16), she did not re-enroll in the Plan until May 2008.[2]  (Id., Ex. 4)  Battle then remained enrolled in the Plan until February 1, 2010.[3]  (Id. ¶¶ 8, 11)

## II. RETIREE ELIGIBILITY FOR HEALTH BENEFITS

   Under the Plan, a retiree seeking health benefits must:

1.  Have retired from active employment at a contributing day care center

2.  Have reached age 62 or older

3.  Have a minimum of five (5) years of enrollment in the Welfare Fund at the time of retirement

4.  Have been covered under the Welfare Fund benefits plan for 48 of the 60 months immediately preceding retirement

5.  Receive pension benefits from either the Cultural Institutions Retirement System (CIRS) or the Social Security Administration.

---

[2]  Battle dated her enrollment card May 9, 2008, her employer completed the verification portion of the enrollment card on May 12, 2008, and the completed and verified enrollment card appears to have been received by the Fund on May 19, 2008.  (Jusino Aff., Ex. 4)  As discussed below, the Plan's Summary Plan Description provides that "eligibility for benefits will be based upon the date that the completed, signed, and [day care] Center-verified enrollment card (and required documents) is received at the Welfare Fund Office."  (Jusino Aff., Ex. 2 at 14)  Accordingly, the operative date here is May 19, 2008.

[3]  Although Battle retired on January 10, 2010 (Jusino Aff., Ex. 3), she remained covered by the Plan until February 1, 2010.  (Jusino Aff. ¶¶ 8, 11)

(Jusino Aff., Ex. 2 at 58; Def. R. 56.1 Stmt. ¶¶ 15-16, 18, 20, 22, 28)

With respect to the fourth requirement – that the retiree was covered under the

Plan for 48 of the 60 months immediately preceding retirement – the Summary Plan Description

("SPD") provides:

> the effective date for benefits . . . is based on the timely receipt of the enrollment
> card and required documents.  Any delay in submitting the enrollment card to the
> Welfare Fund for processing will affect and delay the effective date for benefits.
> This means that whenever an enrollment card is received late (beyond 30 days
> from the date of hire or return to work), the eligibility for benefits will be based
> upon the date that the completed, signed, and Center-verified enrollment card
> (and required documents) is received at the Welfare Fund Office.

(Jusino Aff., Ex. 2 at 14)

The SPD further provides that

> [t]he Fund administrator makes the initial determination about whether [a
> participant's] claim is covered under the Fund.  However, the Fund
> Administrator's determination may be reviewed by the Trustees of the Fund.  The
> Trustees have exclusive authority and discretion to determine whether an
> individual is eligible for benefits, to determine the amount, if any, of an
> individual's benefit, and to interpret and construe the terms and provisions of the
> Fund's documents and summary plan description.  The Trustees' interpretations
> and determinations are final and binding upon any individual claiming benefits
> from the Fund, will be given deference in all courts of law to the greatest extent
> allowed by law, and may not be overturned or set aside unless found to be clearly
> arbitrary and capricious or made in bad faith.

(Id., Ex. 2 at 65)

## III.   PLAINTIFF'S CLAIM FOR RETIREE HEALTH BENEFITS

On March 25, 2010, Battle submitted a Retiree Supplemental Health Benefits

Plan Enrollment Form to the Fund.  (Def. R. 56.1 Stmt. ¶ 4; Jusino Aff., Ex. 1)  In a May 5, 2010

letter, the Fund advised Battle that her application was incomplete, because she had "not list[ed]

[her] spouse . . . as a dependent on the back of the Retiree Application," and that "[i]n order for

[her] spouse to be eligible for benefits as a dependent, [the Fund] need[ed] [her] spouse's

4

information." (Jusino Aff., Ex. 8; Def. R. 56.1 Stmt. ¶ 5)  The Fund asked Battle to supply the

necessary information concerning her spouse.  (Jusino Aff., Ex. 8)

> On June 4, 2010, Battle submitted a second Retiree Supplemental Health Benefits

Plan Enrollment Form.  (Def. R. 56.1 Stmt. ¶ 6; Jusino Aff., Ex. 9)  By letter dated June 24,

2010, the Fund instructed Battle to provide a "notarized letter . . . stating [that she] does not

know [the] whereabouts of [her] spouse [and] has not spoken to him [in] over 2 years."  (Id., Ex.

10)  On July 22, 2010, Battle provided the requested letter.  (Id., Ex. 11)

> On August 11, 2010, Battle sent the following letter to the Fund:

> Regarding my retirement benefits, I was suspended for about 6 or 7 months from
> Metro North Day Care.  After winning my case I was transferred to Carver Day
> Care.  All back salary was given to me and [I was] made whole.
>
> I didn't return to work in 2008, but returned in 2006.

(Id., Ex. 12)

## IV.    INITIAL DENIAL OF BENEFITS

> The Fund determined that Battle had not been covered under the Plan for 48 of

the 60 months immediately preceding her retirement, and thus she was not eligible for retiree

health benefits.[4]  (Def. R. 56.1 Stmt. ¶ 10; Jusino Aff. ¶ 18)

> Although Battle retired on January 10, 2010, she was covered under the Plan until

February 1, 2010.  (Jusino Aff. ¶¶ 8, 11)  Accordingly, the relevant 60 month period runs back to

February 1, 2005.  As noted above, after her break in service in May 2005, Battle did not re-

enroll in the Plan until May 2008.  (Id. ¶ 11, Ex. 4)  Pursuant to the SPD, the effective date of

Battle's Plan coverage was the "1st day of the month following 60 days of Welfare Fund

enrollment."  Because Battle was re-enrolled in the Plan in mid-May 2008, the effective date of

---

[4]  The Fund determined that Battle met the other four eligibility requirements.  (Def. R. 56.1
Stmt. ¶¶ 16-21; 28-30; Jusino Aff. ¶¶ 6-8, 12)

her Plan coverage is August 1, 2008.  (Id. ¶ 11, Ex. 2 at 14)  The Fund credited Battle for 18

months of Plan coverage for the period between August 1, 2008 and February 1, 2010.  (Id. ¶ 11)

Battle was also credited with coverage for four additional months – between February 1, 2005

and May 31, 2005 – when she was working at Metro North Day Care.  (Id. ¶ 11, Ex. 12)

Accordingly, the Fund determined that Battle was covered by the Plan for only 22 of the 60

months immediately preceding her retirement, rather than the 48 months required for benefit

eligibility.  (Id.)

> In an August 12, 2010 letter, the Fund advised Battle that she was not eligible for

retiree health benefits:

> One of the requirements for enrollment in the Retiree Supplemental Health
> Benefit Plan is that you had been covered under the Welfare Fund benefits plan
> for 48 of the 60 months immediately preceding retirement. . . .

> You have not met this requirement.  According to the information received by the
> Welfare Fund, you returned to work 05/16/2008 and were terminated 02/01/2010,
> which is a total of 1 year and 9 months.

> Therefore, you are ineligible for participation into the Retiree Supplemental
> Health Benefit Plan.

(Jusino Aff., Ex. 13)  The August 12, 2010 letter advised Battle of her right to appeal the denial

of benefits and enclosed directions on how to appeal.  (Id.)

## V.   PLAINTIFF'S APPEAL

> On August 12, 2010, Battle appealed the initial denial of benefits.  (Def. R. 56.1

Stmt. ¶ 12; Jusino Aff. ¶ 21)  In an August 31, 2010 letter, the Fund confirmed receipt of the

appeal and advised Battle that her appeal would be considered at the next meeting of the Fund's

Board of Trustees.  (Jusino Aff., Ex. 14)  On September 30, 2010, the Board of Trustees

considered Battle's appeal and determined that she was not eligible for retiree health benefits

under the Plan. (Def. R. 56.1 Stmt. ¶¶ 14-31) On October 7, 2010, the Fund sent a letter to

Battle advising her that the Trustees had denied her appeal (Id. ¶ 31; Jusino Aff. ¶ 24, Ex. 15):

> The Board of Trustees for the DCC-Local 205, DC 1707 Welfare Fund reviewed your appeal at their recent meeting and the denial of your enrollment for Retiree benefits has been upheld.
>
> Under the Summary Plan Description (SPD) Booklet page 58, one of the criteria you must meet is to be a participant in the plan and have been covered under the Welfare Fund benefits plan for 48 of the 60 months immediately preceding retirement.
>
> According to our records, you were terminated from Welfare Fund coverage June 1, 2005 and enrolled May 2008 with an effective date for benefits on August 1, 2008. As a result, you were not a participant nor enrolled in the Fund for the required time period.
>
> While you may have returned to Day Care employment, you were not enrolled for benefits and an enrollment application was not received until May 2008, at which time the effective date for participation in the Fund benefits was established as August 1, 2008 as stated in the SPD page 14 and page 21.

(Jusino Aff., Ex. 15)[5]

On April 28, 2011, Battle submitted a letter from Comfort M. Acquaah, Assistant

Bookkeeper at Carver, stating that "Battle was transferred to Union Carver Day Care Center on

August 14th, 2006." (Def. R. 56.1 Stmt. ¶ 34; Jusino Aff., Ex. 16) On June 1, 2011, the Fund

reviewed Acquaah's letter and determined that it did not provide a basis for altering the

eligibility determination. (Def. R. 56.1 Stmt. ¶ 36; Jusino Aff. ¶ 27) While Battle began

employment at Carver in August 2006, she did not re-enroll in the Plan until May 2008. (Def. R.

56.1 Stmt. ¶ 35; Jusino Aff. ¶ 11) In a June 10, 2011 letter, the Fund advised Battle that "the

---

[5] Battle apparently did not receive the October 7, 2010 letter, although it was sent to her home address. (Def. R. 56.1 Stmt. ¶ 31) On December 20, 2010, Battle called the Fund inquiring about the status of her claim. (Id. ¶ 32; Jusino Aff. ¶ 25) The Fund advised Battle that it had sent her a letter on October 7, 2010 denying her appeal. (Def. R. 56.1 Stmt. ¶ 33; Jusino Aff. ¶ 25) The Fund sent Battle a copy of the October 7, 2010 letter on December 20, 2010. (Def. R. 56.1 Stmt. ¶ 33; Jusino Aff. ¶ 25)

supplemental information that [she] provided [on] April 28, 2011 does not change the outcome

of the denial [of benefits]." (Jusino Aff., Ex. 17)  The Fund explained that

> [t]he supplemental information that was received by the Fund Office on April 28,
> 2011 from Union Carver Children's Center represented that you were employed
> by this Center on August 14, 2006. Applying this information to your appeal, . . .
> even if the Fund Office were to accept Union Carver Children's Center's letter as
> an enrollment form (which it cannot), you still did not qualify [for benefits]. . . .
>
> Assuming that Union Carver Children's Center's letter stating that you were
> employed on August 14, 2006 was appropriate to enroll you in the Fund (which is
> not the case) you still would have only obtained 45 months, which is three (3)
> months less than the required 48.
>
> Understand that your record of employment is not considered appropriate
> enrollment for coverage under the Plan. Rather, the Fund Office must receive at
> minimum, an enrollment card. . . .
>
> Based upon the reasons cited above, your appeal for supplemental retirement
> benefits is denied. The foregoing constitutes the Trustees' final and binding
> determination concerning the claim. . . .

(Id.)

## VI.   **PROCEDURAL HISTORY**

On May 13, 2011, Battle filed an action against Defendants in the Civil Court of

the City of New York, Small Claims Part, seeking a judgment in the amount of $5,000 for

"breach of contract." (Dkt. No. 1, Notice of Removal, Ex. A)  On June 15, 2011, Defendants

filed a notice of removal. (Dkt. No. 1)  Battle filed a motion for summary judgment on October

25, 2011. (Dkt. No. 19)  Defendants cross-moved for summary judgment on October 26, 2011.

(Dkt. No. 20)

## DISCUSSION

### I.   SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when the moving party shows that "there is no genuine dispute as to any material fact" and that that she is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, this Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (citations omitted). "A pro se plaintiff is entitled to 'special latitude' in this regard," Harry v. Suarez, No. 10 Civ. 6756(NRB), 2012 WL 2053533, at *2 (S.D.N.Y. June 4, 2012) (quoting Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998)), "as the Court must construe such a plaintiff's submissions liberally and interpret them to raise the strongest arguments they suggest." Id. (citing Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). "This lenient standard, however, does not relieve a pro se plaintiff of 'his duty to meet the requirements necessary to defeat a motion for summary judgment.'" Id. (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003)). "'[A] party may not rely on mere speculation or conjecture as to the true nature

of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or

denials . . . cannot by themselves create a genuine issue of material fact where none would

otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (quoting Fletcher v. Atex,

Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)). Instead, the non-moving party must "'offer some hard

evidence showing that its version of the events is not wholly fanciful.'" Golden Pac. Bancorp v.

FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (quoting D'Amico v. City of New York, 132 F.3d 145,

149 (2d Cir.1998)).

   "The same standard applies where, as here, the parties filed cross-motions for

summary judgment. . . ." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)

(citing Terwilliger v. Terwilliger, 206 F.3d 240, 244 (2d Cir. 2000)). "[W]hen both parties move

for summary judgment, asserting the absence of any genuine issues of material fact, a court need

not enter judgment for either party. Rather, each party's motion must be examined on its own

merits, and in each case all reasonable inferences must be drawn against the party whose motion

is under consideration." Id. (citing Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir.

1993); Schwabenbauer v. Bd. of Educ., 667 F.2d 305, 314 (2d Cir. 1981)).

   "It is appropriate for courts reviewing a challenge of denial of benefits under

ERISA to do so on a motion for summary judgment, which 'provides an appropriate vehicle

whereby the Court can apply substantive ERISA law to the administrative record.'" Ramsteck v.

Aetna Life Ins. Co., No. 08-CV-0012(JFB)(ETB), 2009 WL 1796999, *6 (E.D.N.Y. June 24,

2009) (quoting Gannon v. Aetna Life Ins. Co., No. 05 Civ. 2160(JGK), 2007 WL 2844869, at *6

(S.D.N.Y. Sept. 28, 2007)).

## II.   STANDARD OF REVIEW

"[A] denial of benefits challenged under [ERISA] is to be reviewed under a <u>de novo</u> standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989); <u>see also</u> <u>Krauss v. Oxford Health Plans, Inc.</u>, 517 F.3d 614, 622 (2d Cir. 2008) (same). "If the insurer establishes that it has such discretion, the benefits decision is reviewed under the arbitrary and capricious standard." <u>Krauss</u>, 517 F.3d at 622 (citing <u>Fay v. Oxford Health Plan</u>, 287 F.3d 96, 104 (2d Cir. 2002)).

"The plan administrator bears the burden of proving that the deferential standard of review applies." <u>Fay</u>, 287 F.3d at 104 (citing <u>Kinstler v. First Reliance Standard Life Ins. Co.</u>, 181 F.3d 243, 249 (2d Cir. 1999)). "Ambiguities are construed in favor of the plan beneficiary." <u>Krauss</u>, 517 F.3d at 622 (citing <u>Fay</u>, 287 F.3d at 104 ("Although express use of the terms 'deference' and 'discretion' in the plan is not necessary to avoid a de novo standard of review, this Court will construe ambiguities in the plan's language against the insurer.")).

"Under the arbitrary and capricious standard of review, [a court] may overturn an administrator's decision to deny ERISA benefits 'only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law. This scope of review is narrow[;] thus[,] [the court is] not free to substitute [its] own judgment for that of [the administrator] as if [the court] were considering the issue of eligibility anew.'" <u>Hobson v. Metro. Life Ins. Co.</u>, 574 F.3d 75, 83-84 (2d Cir. 2009) (quoting <u>Pagan v. NYNEX Pension Plan</u>, 52 F.3d 438, 442 (2d Cir. 1995)).

Here, it is clear that the Plan gives the Board of Trustees discretionary authority to determine eligibility for benefits. (Def. R. 56.1 Stmt. ¶ 14; Jusino Aff. ¶¶ 22-23) The SPD

11

provides that "[t]he Trustees have exclusive authority and discretion to determine whether an

individual is eligible for benefits . . . and to interpret and construe the terms and provisions of the

Fund's documents and summary plan description." (Jusino Aff., Ex. 2 at 65)  Therefore, the

Court "will not disturb the [Trustees'] ultimate conclusion unless it is 'arbitrary and capricious.'"

Hobson, 574 F.3d at 82.[6]

## III.    THE TRUSTEES' DECISION WAS NOT ARBITRARY AND CAPRICIOUS

Defendants contend that "[t]he Trustees did not abuse their discretion when they

rejected [Battle's] claim based on the clearly defined criteria for eligibility set forth in the SPD.

Specifically, Ms. Battle was not covered under the Plan for 48 of the 60 months prior to her

retirement." (Def. Br. 12)

As discussed above, the SPD provides that "the effective date for benefits . . . is

based on the timely receipt of the enrollment card and required documents." (Jusino Aff., Ex. 2

at 14)  The SPD warns that "[a]ny delay in submitting the enrollment card to the Welfare Fund

. . . will affect and delay the effective date for benefits." (Id.)  Here, the record indicates that

---

[6] See also Duncan v. Cigna Life Ins. Co. of New York, No. 10-CV-1164(SJF)(ARL), 2011 WL
6960621, at *3, 3 n.2 (E.D.N.Y. Dec. 30, 2011) ("Here, it appears undisputed that the plan
administrator had discretionary authority to determine a claimant's eligibility for benefits.  The
summary plan description states that benefits will be paid 'only if the Plan Administrator or the
Claims Administrator decides in its discretion that you are entitled to them.'  The Plan
Administrator or the Claims Administrator has the 'sole discretion' to make 'all determinations
arising in the administration, construction, or interpretation of the Plan. . . .'"); Boison v. Ins.
Servs. Office, Inc., 829 F. Supp. 2d 151, 158 (E.D.N.Y. Dec. 17, 2011) ("It is undisputed, and
confirmed by a review of the relevant plan . . . that the Administrator did have discretionary
authority under the Plan.  Article IX of the Plan states that 'The Plan Administrator shall have
the sole authority . . . to make all such determinations and interpretations of the Plan as may be
required for its proper administration."); Schlenger v. Fidelity Emp'r Servs. Co., LLC, 785 F.
Supp. 2d 317, 338 (S.D.N.Y. 2011) ("The IBM LTD Plan states that MetLife 'shall have
discretionary authority to interpret the terms of the LTD Plan and to determine eligibility for and
entitlement to LTD Plan benefits in accordance with the terms of the LTD Plan.'  I find . . . that
MetLife's decision denying Plaintiff's LTD claim should be reviewed under the 'arbitrary and
capricious standard.'").

Battle's enrollment card was received by the Fund on May 19, 2008, and that the effective date

of her re-enrollment in the Plan was August 1, 2008. (Jusino Aff., Ex. 2 at 14, Ex. 4)  It is

likewise undisputed that Battle retired on January 10, 2010.  (Id., Ex. 3)  The Court further finds

that Battle was covered under the Plan only for the 18 months between August 1, 2008 and

February 1, 2010, and for the four months between February 1, 2005 and May 31, 2005.

Accordingly, Battle was covered under the Plan for only 22 of the 60 months that "immediately

preceded her retirement."  The SPD provides, however, that a retiree seeking health benefits

under the Plan must demonstrate that he or she was "covered under the Welfare Fund benefits

plan for 48 of the 60 months immediately preceding retirement."  (Id., Ex. 2 at 58)  Because

Battle did not satisfy the 48 month requirement set forth in the SPD, the Court cannot find that

the Trustees' decision to deny her retiree health benefits was "'without reason, unsupported by

substantial evidence or erroneous as a matter of law.'"  Hobson, 574 F.3d at 83 (citation

omitted).

   Battle argues, however, that she is receiving a pension based on nearly twenty

years of work, that "the [ ]Fund is denying [her benefits] because of [her] cancer," and that "[t]he

union has some discriminatory practices toward its members."  (Pltf. Br. 1)  Battle further

contends that although she was suspended from work in 2005, she was reinstated in August

2006, received back pay for the period of her suspension, and was "made whole."  (Id.; see also

Jusino Aff., Ex. 12)  In support of her summary judgment motion, Battle submits (1) a page from

the glossary of the AFSCME Steward Handbook indicating that the Union defines "made whole"

as meaning that "a grievant is treated as though management never took the improper action";

(2) a July 28, 2011 letter from the Cultural Institutions Retirement System ("CIRS") indicating

that CIRS is "researching your inquiry regarding service for applicable benefits"; and (3) a July

13

25, 2006 letter from Union Settlement Association indicating that Battle is reinstated as an

Assistant Teacher at Union Settlement and should report to work on July 31, 2006.

   As an initial matter, Defendants object to the Court considering these documents,

because they are not part of the administrative record. (Def. Reply Br. 2-3) There is a

"presumption . . . that judicial review 'is limited to the record in front of the claims administrator

unless the district court finds good cause to consider additional evidence.'" Muller v. First

Unum Life Ins. Co., 341 F.3d 119, 125 (2d Cir. 2003) (quoting DeFelice v. Am. Int'l Life

Assurance Co. of N.Y., 112 F.3d 61, 67 (2d Cir. 1997)). When determining whether "good

cause" exists,

> the Second Circuit has framed the inquiry thus: "Where sufficient procedures for
> initial or appellate review of a claim are lacking, there exist greater opportunities for
> conflicts of interest to be exacerbated and, in such a case, the fairness of the ERISA
> appeals process cannot be established using only the record before the administrator.
> In such circumstances, . . . the district court may assume an active role in order to
> ensure a comprehensive and impartial review of the case. . . ."

Ramsteck, 2009 WL 1796999, at *8 (quoting Locher v. Unum Life Ins. Co. of Am., 389 F.3d

288, 296 (2d Cir. 2004)). "Though consideration of outside materials most often arises when a

claimant alleges a conflict of interest, district courts may also find 'good cause' where the plan

administrator's review processes are compromised." Id. (citations omitted).

   Battle does not argue that there is "good cause" for the Court to consider these

additional documents, which were not submitted during the administrative process. Moreover,

there is no evidence that the Trustees are biased against her based on her cancer or some other

circumstance. There is likewise no evidence that the Trustees failed to consider the

documentation relevant to Battle's claim. Because Battle has failed to satisfy the "good cause"

requirement, the additional documents she submits in support of her motion may not be

considered. See id.

Even if the Court were to consider the additional documents submitted by Battle, they do not undermine the Court's conclusion that the Trustees' decision was reasoned and supported by the evidence. Assuming arguendo that Battle was "made whole" upon her return to work after her May 2005 suspension, she does not contend that she was actually enrolled in the Plan during the period between May 2005 and May 2008. It is the date of Battle's re-enrollment in the Plan – not her record of employment – that is critical here. While Battle may have returned to work in July 2006, she was told in a July 6, 2005 letter that her Plan coverage ended on May 31, 2005, and she did not re-enroll in the Plan until May 2008. (Jusino Aff., Ex. 4, Ex. 5) Given her retirement in January 2010, she has not satisfied the 48 month Plan coverage requirement. Accordingly, the Court cannot find that the Fund's rejection of her claim for retiree health benefits was "arbitrary and capricious."

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied. The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 19, 20) and to close this case.

Dated: New York, New York
       July 25, 2012

                              SO ORDERED.

                              _____
                              Paul G. Gardephe
                              United States District Judge